Michael T. Castaldo v. The State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-147-CR

Â Â Â Â Â MICHAEL T. CASTALDO,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the County Court
Navarro County, Texas
Trial Court # 45797
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
DISSENTING AND CONCURRING OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â 
Â Â Â Â Â Â The rules by which we are governed require âa written opinion that is as brief as
practicable but...addresses every issue...necessary to final disposition of the appeal.â Tex. R.
App. P. 47.1 (emphasis added). Because the majority disposes of this cause on an issue which
was not necessary for disposition of the appeal, and further because I disagree with the
majorityâs analysis of that issue, I respectfully dissent. I do, however, concur in the result
reached on an issue raised that disposes of the entire appeal.
Â Â Â Â Â Â Castaldoâs second issue is:
The trial court erred in allowing the State to present as evidence in its case-in-chief of
alleged extraneous crimes, wrongs or acts on the part of the Appellant?

(Emphasis added). However, in its disposition of this issue, the majority spends a great deal
of time discussing the application of Rule 404(b) to evidence admitted regarding the driver of
the Jeep in which Castaldo was a passenger. Castaldo grouped his complaints about all the
extraneous evidence admitted over his objections in one issue and counters the anticipated
argument of the State that the evidence was necessary background contextual evidence. The
majority ultimately holds that Rule 404(b) applies to acts of third parties.
Â Â Â Â Â Â I cannot agree that Rule 404(b) applies to the acts of third parties. Our sister court in Fort
Worth has squarely addressed this issue. In McNight v. State, the defendant argued on appeal
that evidence of a witnessâs murder conviction and two pending charges were erroneously
admitted in violation of Rules 401, 403, and 404. The Fort Worth court held that the 404
objection to the evidence was properly overruled because that Rule only applied to the
admission of extraneous offenses of the accused. McNight v. State, 874 S.W.2d 745, 747
(Tex. App.âFort Worth 1994, no pet.).
Â Â Â Â Â Â It appears that the Fifth Circuit is in agreement with this conclusion as well. It first
touched on this topic in 1978. U.S. v. Beechum, 582 F.2d 898 (5th Cir. 1978). Beechum
involved extrinsic offense evidence but not by a third party. In Beechum, the court set out the
two-step test to determine whether extrinsic offense or bad act evidence would be admissible. 
First, the extrinsic evidence must be relevant to an issue other than the defendantâs character. 
Id. at 911. Second, the evidence must have probative value that is not substantially
outweighed by undue prejudice and meet the other requirements of Rule 403 of the Federal
Rules of Evidence. Id. The court went on to state that it was obvious that if the defendant did
not commit the extrinsic act or offense, the evidence was irrelevant and inadmissible. Id. at
912-913. The government was required to offer proof demonstrating that the defendant
committed the act. Id. at 913.
Â Â Â Â Â Â In 1979, while explaining the applicability of Rule 404(b), the Fifth Circuit stated that the
rule was based on the fear that the jury will use evidence that the defendant has, at other times,
committed bad acts to convict him of the charged offense. U.S. v. Aleman, 592 F.2d 881, 885
(5th Cir. 1979). Again, this did not involve acts of a third party, and the court held that the
act was not extrinsic because it was intertwined with the charged offense.
Â Â Â Â Â Â Then, in 1981, the court finally reviewed a case where the government had successfully
entered into evidence the extrinsic act of a third party. U.S. v. Krezdorn, 639 F.2d 1327 (5th
Cir. 1981). In Krezdorn, the defendant was a U.S. Immigration Inspector who was charged
with falsely making and forging the signature of another inspector on the application for border
crossing cards of five nonresident aliens. The government admitted over the defendantâs
objection evidence that the aliens whose applications were forged acquired their border
crossing cards by illegally paying a third party who lived in a border town. The court
acknowledged that the extraneous offense was committed by a person other than the defendant
but stated, â[a]rguably, this is not the kind of evidence to which Rule 404(b) applies.â Id. at
1332. The court noted that âwhere the only purpose served by extrinsic offense evidence is to
demonstrate the propensity of the defendant to act in a certain way, the evidence must be
excluded.â Id. at 1333. But, the court further noted that when the âextrinsic offense was not
committed by the defendant, the evidence will not tend to show that the defendant has a
criminal disposition and that he can be expected to act in conformity therewith.â Id. For the
purpose of the 404(b) argument, the court relied on Beechum and concluded, â[i]t would seem,
therefore, that when extrinsic offense evidence is sought to be introduced against a criminal
defendant, in order to trigger the application of Rule 404(b) there must be an allegation that the
extrinsic offense was committed by the defendant.â Id. The court, however, declined to
decide whether 404(b) was applicable to their facts because the evidence was admissible
whether or not 404(b) applied. Id.
Â Â Â Â Â Â There are other means of keeping out extrinsic acts or offenses of third parties. See
Williams v. State, No. 10-98-00359-CR (Tex. App.âWaco August 30, 2000, no pet. h.). 
Rule 404(b) does not and should not be applied to the extrinsic acts or offenses of a third party. 
Thus, I dissent from the majorityâs determination of the issue based on Rule 404(b). Further, I
dissent because the eleven pages of discussion by the majority of Rule 404(b) is not only wrong
but is completely unnecessary to the disposition of the appeal. Tex. R. App. P. 47.1.
Â Â Â Â Â Â I concur with the majority opinion regarding the need for the limiting jury instruction upon
which the result is properly founded.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â TOM GRAY
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Dissenting and Concurring opinion delivered and filed November 1, 2000
Publish



iled an amended no-evidence summary judgment motion addressing the additional
claims raised in Kellys amended petition.Â  Kelly then filed a second amended
petition clarifying his allegations to be claims for fraud and breach of
contract against Gaines, Southwest Guaranty, Thompson, and Commercial Realty
and a claim for breach of fiduciary duty against Thompson and Commercial Realty.

Â Â Â Â Â Â Â Â Â  The hearing on GainesÂs and Southwest
GuarantyÂs second no-evidence summary judgment motion was set for May 29.Â 
Kelly filed a pleading on May 21 requesting that the hearing be continued to
allow further discovery and, subject to the requested continuance, responding
to the contentions of the summary judgment motion.Â  The court denied the
requested continuance and granted GainesÂs and Southwest GuarantyÂs second
no-evidence summary judgment motion on KellyÂs fraud and contract claims.

Â Â Â Â Â Â Â Â Â  In June, Kelly filed a no-evidence
summary judgment motion on GainesÂs and Southwest GuarantyÂs counterclaims.Â 
Kelly also filed: (1) a motion to reconsider the prior summary judgment
rulings, (2) a response to ThompsonÂs and Commercial RealtyÂs amended
no-evidence summary judgment motion, and (3) a motion to supplement the motion
to reconsider with MeeksÂs affidavit.Â  Gaines and Southwest Guaranty filed a
response to KellyÂs no-evidence summary judgment motion on their
counterclaims.Â  Kelly filed a supplemental petition alleging a claim of
promissory estoppel against Gaines and Southwest Guaranty.Â  At a June 27
hearing, the court granted ThompsonÂs and Commercial RealtyÂs no-evidence
summary judgment motion.

Â Â Â Â Â Â Â Â Â  In July, Gaines and Southwest Guaranty
filed a summary judgment motion contending that KellyÂs promissory estoppel
claim was barred by limitations and a motion for sanctions.Â  Kelly filed a
response to GainesÂs and Southwest GuarantyÂs summary judgment motion and a
second motion to reconsider the courtÂs prior summary judgment rulings.Â 
Thompson, and Commercial Realty filed a response to KellyÂs second motion to
reconsider.

Â Â Â Â Â Â Â Â Â  In August, Kelly filed a motion for
sanctions against Gaines and Southwest Guaranty and a response to GainesÂs and
Southwest GuarantyÂs sanctions motion.

Â Â Â Â Â Â Â Â Â  In September, the court denied KellyÂs
motions to reconsider, granted GainesÂs and Southwest GuarantyÂs summary
judgment motion on KellyÂs promissory estoppel claim, and granted KellyÂs
summary judgment motion on GainesÂs and Southwest GuarantyÂs counterclaims.Â  The
court denied the sanctions motions filed by Kelly and by Gaines and Southwest
Guaranty.Â  Thereafter, the court signed its final judgment. Â Kelly filed a
motion for new trial which the court denied in October.

Issues Presented

Â Â Â Â Â Â Â Â Â  Kelly presents eight issues in which
he contends the court abused its discretion by: (1)Â  denying his first
continuance motion; (2) granting GainesÂs and Southwest GuarantyÂs first
no-evidence summary judgment motion; (3) denying his second continuance motion;
(4) granting GainesÂs and Southwest GuarantyÂs second no-evidence summary
judgment motion; (5) granting ThompsonÂs and Commercial RealtyÂs no-evidence
summary judgment motion; (6) denying his motion to compel Gaines and/or Southwest
Guaranty to answer deposition questions regarding the source of funding for the
contemplated loan; (7) denying his motions to reconsider the summary judgment
rulings; and (8) denying his motion for new trial.

Â Â Â Â Â Â Â Â Â  Gaines and Southwest Guaranty contend
in their first cross-issue that the court abused its discretion by denying their
motion for sanctions.Â  Subject to a reversal and remand on other issues, they
contend in their second and third cross-issues that the court erred by granting
KellyÂs no-evidence summary judgment motion on their counterclaims and by
denying their motion to release certain documents Kelly filed with the court
under seal.

Continuance Motions

Â Â Â Â Â Â Â Â Â  Kelly contends in his first and third
issues respectively that the court abused its discretion by denying his first
and second continuance motions.

Â Â Â Â Â Â Â Â Â  KellyÂs first continuance motion
rested on essentially two grounds: (1) Kelly had retained a new attorney at
about the same time as GainesÂs and Southwest GuarantyÂs first no-evidence
summary judgment motion was filed; and (2) Kelly had not had adequate time for
discovery.[2]

Â Â Â Â Â Â Â Â Â  When a continuance request is premised
on the withdrawal of counsel, the movant must show that the failure to be
represented at trial is not due to his own fault or negligence.Â  Villegas v.
Carter, 711 S.W.2d 624, 626 (Tex. 1986); In re Posadas USA, Inc.,
100 S.W.3d 254, 258 (Tex. App.ÂSan Antonio 2001, orig. proceeding); St.
Gelais v. Jackson, 769 S.W.2d 249, 253 (Tex. App.ÂHouston [14th Dist.]
1988, no writ).Â  This principle likewise applies when new counsel is retained
shortly before trial.Â  See St. Gelais, 769 S.W.2d at 254.

Â Â Â Â Â Â Â Â Â  Here, Gaines and Southwest Guaranty
filed their summary judgment motion more than three and one-half years after
Kelly filed suit and more than three years after Kelly filed his first amended
petition.Â  Kelly changed attorneys twice during this period.Â  KellyÂs newly
retained counsel stated at the hearing that he had been in discussions with Kelly
about taking the case for two months before the date of the hearing and had
discussed the case with KellyÂs former counsel and opposing counsel before
making a formal appearance on KellyÂs behalf.Â  In fact, Gaines and Southwest
Guaranty faxed a copy of the summary judgment motion to KellyÂs new counsel
three days before it was filed and six days before the motion to substitute
counsel was filed.

Â Â Â Â Â Â Â Â Â  From this procedural history, the court
could have concluded that Kelly bore some fault for deciding to change lawyers
so close to the date of the summary judgment hearing.Â  Thus, we conclude that
the court did not abuse its discretion by denying KellyÂs first continuance
motion because Kelly had only recently retained new counsel.Â  See St. Gelais,
769 S.W.2d at 253-45 (no abuse of discretion in denying continuance where new
counsel retained only one week before trial).

Â Â Â Â Â Â Â Â Â  Kelly also contends that the court
abused its discretion by denying his first continuance motion because there had
not been adequate time for discovery. Â The primary factors to consider when
determining whether there has been adequate time for discovery are: the nature
of the case, the nature of the evidence necessary to controvert the no-evidence
motion, and the length of time the case had been active. Â McMahan v.
Greenwood, 108 S.W.3d 467, 498 (Tex. App.ÂHouston [14th Dist.] 2003, pet.
denied); Trostle v. Trostle, 77 S.W.3d 908, 917 (Tex. App.ÂAmarillo
2002, no pet.); see also Restaurant Teams Intl., Inc. v. MG Securities Corp.,
95 S.W.3d 336, 339 (Tex. App.ÂDallas 2002, no pet.); Martinez v. City of San
Antonio, 40 S.W.3d 587, 591 (Tex. App.ÂSan Antonio 2001, pet. denied).Â 
Other factors to consider include: the amount of time the no-evidence motion had
been on file, whether the movant had requested stricter time deadlines for
discovery, the amount of discovery that had already taken place, and whether
the discovery deadlines that are in place were specific or vague. Â Id.

Â Â Â Â Â Â Â Â Â  The primary factors weigh in favor of
the courtÂs ruling.Â  Because of the numerous claims, counterclaims, and
third-party claims pleaded, the case is somewhat complex.Â  Kelly notes that
Gaines and Southwest Guaranty had filed their countersuit and third-party
action only seven months before the summary judgment hearing.Â  Thus, the first
factor arguably favors Kelly.

Â Â Â Â Â Â Â Â Â  At issue in the summary judgment
motion were KellyÂs five claims against Gaines and Southwest Guaranty (breach
of contract, fraud, negligence, conspiracy, and conversion), whether Thompson
acted as GainesÂs and/or Southwest GuarantyÂs agent, and whether Kelly was
entitled to exemplary damages because Gaines and/or Southwest Guaranty acted
with malice.Â  The motion adequately identifies the elements of each claim or
contention for which Gaines and Southwest Guaranty alleged that there was no
evidence.Â  With minimal discovery, Kelly would have been able to respond by
affidavit with some evidence for each of the challenged elements, assuming such
evidence existed.Â  See Restaurant Teams Intl., 95 S.W.3d at 339-40; Dickson
Constr., Inc. v. Fid. & Deposit Co. of Md., 5 S.W.3d 353, 356 (Tex.
App.ÂTexarkana 1999, pet. denied).Â  This is particularly true because Kelly is
presumed to have investigated his case before filing suit.Â  See Restaurant
Teams Intl., 95 S.W.3d at 340; Martinez, 40 S.W.3d at 591.Â  Thus,
the second factor tends to favor the courtÂs ruling.

Â Â Â Â Â Â Â Â Â  As noted, KellyÂs suit had been
pending for more than three years.Â  This clearly favors the courtÂs ruling.Â 
Thus, two of the three primary factors weigh in favor of the courtÂs ruling.Â 
However, three of the remaining four factors weigh in KellyÂs favor.

Â Â Â Â Â Â Â Â Â  GainesÂs and Southwest GuarantyÂs
summary judgment motion had been on file for the minimum time allowed.Â  Thus,
this factor favors Kelly.

Â Â Â Â Â Â Â Â Â  There were no discovery deadlines in
place at the time the summary judgment motion was pending.Â  Gaines and
Southwest Guaranty had tried to secure an agreement of the parties on discovery
deadlines and a trial setting, but none was reached.Â  Because the discovery
deadlines were unclear when Gaines and Southwest Guaranty filed their summary
judgment motion, it could be argued that they implicitly sought stricter
deadlines.Â  Thus, these factors favor Kelly.Â  See Restaurant Teams Intl.,
95 S.W.3d at 341-42.

Â Â Â Â Â Â Â Â Â  For most of the time period preceding
the summary judgment hearing, little discovery was conducted.Â  Discovery did
not begin in earnest until after entry of the docket control order.Â  Kelly suggests
that, because Southwest Guaranty was without counsel from June 2001 to April
2002, Âno action could be taken by or against Southwest GuarantyÂ during that
period.[3]Â 
We disagree.

The rules clearly permit discovery to be served
on any person or entity, regardless of whether they are represented by
counsel.Â  See e.g. Tex. R. Civ.
P. 191.3(a)(2).Â  It would then be incumbent on the recipient of the
discovery to take the steps necessary to answer the discovery or suffer the
consequences of failing to respond.

Kelly failed to diligently pursue discovery
during most of the three-year period before Gaines and Southwest Guaranty filed
their summary judgment motion.Â  Therefore, this factor favors the courtÂs
ruling.Â  See Restaurant Teams Intl., 95 S.W.3d at 341.

Quantitatively, the factors overall are fairly
evenly distributed for and against the courtÂs ruling.Â  However, the fact that
Kelly failed to diligently pursue discovery despite having three years to do so
and the fact that KellyÂs claims do not present novel legal theories and could
have survived a summary judgment motion with minimal investigation and
discovery, weigh heavily in favor of the courtÂs ruling.Â  Accordingly, the
court did not abuse its discretion by denying KellyÂs first continuance motion,
and we overrule his first issue.Â  See McMahan, 108 S.W.3d at 498-99; Trostle,
77 S.W.3d at 917-18; Dickson Constr., 5 S.W.3d at 356-57.

Kelly contends in his third issue that the court
abused its discretion by denying his second continuance motion.Â  However, he
did not verify his second continuance motion.Â  Therefore, he did not preserve
this issue for appellate review.Â  See Watson v. Dallas Indep. Sch. Dist.,
135 S.W.3d 208, 227 (Tex. App.ÂWaco 2004, no pet.); Tempay, Inc. v. TNT
Concrete & Constr., Inc., 37 S.W.3d 517, 520-21 (Tex. App.ÂAustin 2001,
pet. denied); Green v. City of Friendswood, 22 S.W.3d 588, 594 (Tex.
App.ÂHouston [14th Dist.] 2000, pet. denied).Â  Accordingly, we overrule KellyÂs
third issue.

First No-Evidence Summary Judgment Motion

Â Â Â Â Â Â Â Â Â  Kelly contends in his second issue
that the court erred by sustaining GainesÂs and Southwest GuarantyÂs first
no-evidence summary judgment motion.Â  Because of KellyÂs non-suit, this motion
challenged KellyÂs claims against Gaines and Southwest Guaranty for negligence,
conspiracy, and conversion, whether Thompson acted as GainesÂs or Southwest
GuarantyÂs agent, and whether Kelly was entitled to exemplary damages because
Gaines and/or Southwest Guaranty acted with malice.

Â Â Â Â Â Â Â Â Â  We apply the same standard in
reviewing a no-evidence summary judgment as we would in reviewing a directed
verdict.Â  See King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003); Watson, 135 S.W.3d at 219.Â  Thus, Â[w]e review the evidence in the light
most favorable to the non-movant, disregarding all contrary evidence and
inferences.ÂÂ  Id.Â  A no-evidence summary judgment will be defeated if
the non-movant produces more than a scintilla of probative evidence to raise a
genuine issue of material fact on the elements challenged by the movant.Â  Id.

We consider only those grounds expressly
presented by the movant in the summary judgment motion and by the non-movant in
its response. Â See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623,
625 (Tex. 1996); McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d
337, 343 (Tex. 1993); Protective Life Ins. Co. v. Russell, 119 S.W.3d 274,
285 (Tex. App.ÂTyler 2003, pet. denied); Fletcher v. Edwards, 26 S.W.3d 66,
74 (Tex. App.ÂWaco 2000, pet. denied).

ÂWhen the trial court does not specify the basis
for its summary judgment, the appealing party must show it is error to base it
on any ground asserted in the motion.Â Â Star-Telegram, Inc. v. Doe, 915
S.W.2d 471, 473 (Tex. 1995); Watson, 135 S.W.3d at 219.

Gaines and Southwest Guaranty alleged in their
first no-evidence summary judgment motion that Kelly could produce no evidence
to prove the following elements of his negligence claim: (1) duty; (2) breach;
(3) proximate cause; and (4) damages.Â  In response, Kelly asserted that, if a
jury refused to find that Gaines and Southwest Guaranty were fraudulent in the
manner in which they failed to loan him the monies contemplated by the loan
commitment, then they Âwere negligent in failing to do that which a
reasonabl[y] prudent person or organization would have done under the same or
similar circumstances.Â

The only basis asserted by Kelly to establish
that Gaines and Southwest Guaranty owed him a legal duty was their obligations
under the loan commitment.Â  However, a properly-executed loan commitment is a
binding contract.Â  See e.g. Gibson v. Drew Mortg. Co., 696 S.W.2d 211,
213 (Tex. App.ÂHouston [14th Dist.] 1985, writ refÂd n.r.e.).Â  Â[I]f the
defendantÂs conduct . . . would give rise to liability only because it breaches
the partiesÂ agreement, the plaintiffÂs claim ordinarily sounds only in
contract.ÂÂ  DeWitt County Elec. Co-op., Inc. v. Parks, 1 S.W.3d 96, 105
(Tex. 1999) (quoting Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494
(Tex. 1991); OXY USA, Inc. v. Cook, 127 S.W.3d 16, 20 (Tex. App.ÂTyler
2003, pet. denied).Â  Thus, Kelly failed to present any evidence that Gaines and
Southwest Guaranty owed him a legal duty other than the duties they owed him
under the contract.Â  Accordingly, the court properly granted the summary
judgment motion as to KellyÂs negligence claim.Â  See Tex. R. Civ. P. 166a(i); Martinez v.
Abbott Laboratories, 146 S.W.3d 260, 272 (Tex. App.ÂFort Worth 2004, pet.
denied); Williams v. Bank One, Tex., N.A., 15 S.W.3d 110, 117 (Tex.
App.ÂWaco 1999, no pet.).

Kelly did not respond to GainesÂs and Southwest
GuarantyÂs allegations that he could produce no evidence to support various
elements of his conspiracy and conversion claims.Â  Accordingly, the court
properly granted the summary judgment motion as to these claims.Â  Id.

Gaines and Southwest Guaranty alleged that Kelly
could produce no evidence that anyone was acting as their agent Âfor purposes
of negotiating the loan.ÂÂ  Kelly responded with evidence he contends raises a
genuine issue of material fact on the question of whether Thompson acted as
GainesÂs and Southwest GuarantyÂs agent.Â  KellyÂs evidence consists of his own
affidavit and that of his attorney Bullard, both of whom stated in essence that
(1) Thompson told them that he worked for Gaines, (2) all the loan paperwork
bore Southwest Guaranty letterhead and was received from and submitted through
Thompson, and (3) Gaines did not deny that Thompson was his agent when Kelly
and Bullard referred to Thompson as such.

Â Â Â Â Â Â Â Â Â  Apparent authority in Texas is based on estoppel.Â  It may arise either from a principal knowingly permitting an
agent to hold herself out as having authority or by a principal's actions which
lack such ordinary care as to clothe an agent with the indicia of authority,
thus leading a reasonably prudent person to believe that the agent has the
authority she purports to exercise.

Â 

Baptist Meml. Hosp. Sys. v. Sampson, 969 S.W.2d 945, 949 (Tex. 1998); accord
Walker Ins. Servs. v. Bottle Rock Power Corp., 108 S.W.3d 538, 550-51 (Tex. App.ÂHouston [14th Dist.] 2003, no pet.).

Â Â Â Â Â Â Â Â Â  Kelly and Bullard both stated in their
summary judgment affidavits that Gaines did not deny that Thompson was an agent
of Southwest Guaranty when they referred to him as such.Â  It is undisputed that
Thompson acted as an intermediary for Southwest Guaranty with regard to the
loan paperwork.Â  Thus, Kelly presented more than a scintilla of evidence on the
issue of whether Thompson was an agent of Southwest Guaranty.Â  See Walker
Ins. Servs., 108 S.W.3d at 551-52.Â  Accordingly, the court erred by
granting the summary judgment motion on the issue of agency.

Gaines and Southwest Guaranty alleged that Kelly
could produce no evidence of malice to support an award of exemplary damages.Â 
Kelly did not respond to this allegation.Â  However, malice is not the only
basis on which exemplary damages may be awarded.Â  See Tex. Civ. Prac. & Rem. Code Ann. Â§ 41.003(a)
(Vernon Supp. 2004-2005).Â  Rather, exemplary damages may be awarded in a proper
case if the plaintiff shows fraud, malice, or gross negligence on the part of
the defendant.Â  Id.

Kelly alleged in his first amended petition that
he is entitled to exemplary damages because the defendants acted with fraud and
gross negligence.Â  Thus, even though Kelly produced no evidence of malice, his
claim for exemplary damages survived GainesÂs and Southwest GuarantyÂs
no-evidence summary judgment motion because such damages may be awarded on a
finding of fraud or gross negligence.Â  Accordingly, the court erred by granting
the summary judgment motion on KellyÂs claim for exemplary damages.

In summary, the court properly granted GainesÂs
and Southwest GuarantyÂs first no-evidence summary judgment motion on KellyÂs
claims for negligence, conspiracy, and conversion.Â  The court erred by granting
the motion on KellyÂs allegation that Thompson acted as GainesÂs and/or
Southwest GuarantyÂs agent and on KellyÂs claim for exemplary damages.Â  Accordingly,
we sustain KellyÂs second issue in part and overrule it in part.

Second No-Evidence
Summary Judgment Motion

Kelly contends in his fourth issue that the
court erred by granting GainesÂs and Southwest GuarantyÂs second no-evidence
summary judgment motion on his contract and fraud claims.

Gaines and Southwest Guaranty contended in this
motion that Kelly could produce no evidence to support the following elements
of his contract claim: (1) that the parties ever reached agreement on all
material terms related to the contemplated loan; (2) that Gaines acted in his
individual capacity with respect to the negotiation or execution of the loan
commitment; (3) that Gaines is a party to the loan commitment; (4) that Kelly
performed all conditions precedent; and (5) that Kelly suffered damages.

A loan commitment is a unilateral or bilateral
agreement by a lender to make a loan.Â  See Valdina Farms, Inc. v. Brown,
Beasley & Assocs., Inc., 733 S.W.2d 688, 693-94 (Tex. App.ÂSan Antonio
1987, no writ); B. F. Saul Real Est. Inv. Trust v. McGovern, 683 S.W.2d 531,
534-35 (Tex. App.ÂEl Paso 1984, no writ); BlackÂs Law Dictionary 955
(Bryan A. Garner ed., 8th ed., West 2004).[4]Â 
The material terms of a contract to loan money are (1) the loan amount, (2) the
maturity date, (3) the interest rate, and (4) the repayment terms.Â  See T.
O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992); Beal Bank, S.S.B. v. Schleider, 124 S.W.3d 640, 653 (Tex. App.ÂHouston [14th Dist.] 2003, pet. denied).

Here, the loan commitment contains these four
elements.Â  The contemplated loan would be for $2,010,000.Â  The note would have
a one-year term and would bear interest at the fixed annual rate of 14.5%.Â  And
by describing the loan type as a balloon, the parties contemplated that Kelly
would make monthly interest payments and pay the principal balance at the end
of the loanÂs term.Â  See BlackÂs Law Dictionary at 1088 (defining
Âballoon noteÂ);[5] cf.
T.O. Stanley Boot Co., 847 S.W.2d at 221-22 (finding no contract where
plaintiffs presented evidence of only one element of the contract to loan
money).

In KellyÂs summary judgment response, he
contended that Gaines may be held personally liable on the commitment because Southwest
Guaranty is GainesÂs alter ego.Â  However, Kelly does not make this assertion in
his appellate briefs.Â  Because KellyÂs appellate briefs do not challenge the
courtÂs finding on the issue of whether Gaines is personally liable on the loan
commitment, we must uphold the courtÂs ruling on this issue.[6]Â 
See Star-Telegram, 915 S.W.2d at 473; Watson, 135 S.W.3d at 219. 

In KellyÂs summary judgment response, he
contended that Southwest Guaranty had failed to specifically deny in its
petition that Kelly had not performed any particular conditions precedent.Â 
Kelly noted that, when a plaintiff pleads generally that all conditions
precedent have been performed (as Kelly did in his second amended petition),
Rule of Civil Procedure 54 requires a defendant to specifically deny particular
conditions precedent before the plaintiff will be required to prove them.[7]Â 
However, Kelly does not make this assertion in his appellate briefs.Â  Because
Kelly does not make this argument on appeal and because his summary judgment
response did not present any other responsive argument to Southwest GuarantyÂs
contention with regard to the performance of conditions precedent, we must
uphold the courtÂs ruling as to KellyÂs failure to perform the necessary
conditions precedent.Â  See Star-Telegram, 915 S.W.2d at 473; Watson,
135 S.W.3d at 219.

Accordingly, the court did not err by granting
GainesÂs and Southwest GuarantyÂs second no-evidence summary judgment motion on
KellyÂs contract claim.

Gaines and Southwest Guaranty contended in the
summary judgment motion that Kelly could produce no evidence to support the
following elements of his fraud claim: (1) that Gaines or Southwest Guaranty
made any representations or omissions of material facts; (2) that Kelly relied
on any alleged representations; (3) that Gaines or Southwest Guaranty committed
any intentional act; (4) that Kelly suffered any damages because of any alleged
misrepresentations; and (5) that Kelly suffered Âany damages at all.Â

To prove a common-law fraud claim, a plaintiff
must show: Â(1) that a material representation was made; (2) the representation
was false; (3) when the representation was made, the speaker knew it was false
or made it recklessly without any knowledge of the truth and as a positive
assertion; (4) the speaker made the representation with the intent that the
other party should act upon it; (5) the party acted in reliance on the
representation; and (6) the party thereby suffered injury.ÂÂ  Johnson v.
Brewer & Pritchard, P.C., 73 S.W.3d 193, 211 n.45 (Tex. 2002) (quoting In
re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001) (orig.
proceeding)); Clifton v. Hopkins, 107 S.W.3d 755, 757 (Tex. App.ÂWaco 2003,
no pet.).

With regard to evidence of a material
misrepresentation, Kelly responded that Thompson, as GainesÂs and Southwest
GuarantyÂs agent, represented to him that the loan was Âa done deal.ÂÂ  It is
undisputed that the contemplated loan was not funded.Â  We have already
determined that a genuine issue of material fact remains on the question of
whether Thompson was the agent of Gaines and/or Southwest Guaranty.Â  Viewed in a
light most favorable to Kelly, he produced more than a scintilla of evidence on
the issue of material misrepresentation.Â  See Rosas v. Hatz, 147 S.W.3d 560,
564-65 (Tex. App.ÂWaco 2004, no pet.).

With regard to evidence of reliance, Kelly
responded that he relied on the alleged misrepresentation to his detriment
because he did not seek other sources of funding.Â  Viewed in a light most
favorable to Kelly, he produced more than a scintilla of evidence on the issue
of reliance.Â  See Lyda Constructors, Inc. v. Butler Mfg. Co., 103 S.W.3d
632, 638-39 (Tex. App.ÂSan Antonio 2003, no pet.); Herrin v. Med. Protective
Co., 89 S.W.3d 301, 306-07 (Tex. App.ÂTexarkana 2002, pet. denied).

With regard to evidence of intent, Kelly
responded that ThompsonÂs representation that the loan was Âa done dealÂ led
him Âto assume that the Defendants would in fact fund the loan.ÂÂ  Viewed in a
light most favorable to Kelly, he produced more than a scintilla of evidence
that Thompson, as GainesÂs and Southwest GuarantyÂs agent, intended for Kelly
to act on the representation.Â  See Kelly v. Rio Grande Computerland Group,
128 S.W.3d 759, 770 (Tex. App.ÂEl Paso 2004, no pet.); Alford v. Thornburg,
113 S.W.3d 575, 587-88 (Tex. App.ÂTexarkana 2003, no pet.).

With regard to evidence of damages, Kelly
contends that, because of GainesÂs and/or Southwest GuarantyÂs failure to fund
the contemplated loan, he was forced to find alternate funding, which resulted
in a diminution of the ownership interest he otherwise would have held in the Cowtown Park.

Â Â Â Â Â Â Â Â Â  Generally, when . . . fraud is
associated with the purchase or transfer of property, the victim is entitled to
recover the difference between the value of that parted with and that
received.Â  In addition, the victim is also entitled to recover for pecuniary
loss suffered otherwise as a consequence of his reliance upon the
misrepresentation.

Â 

Tex. Commerce Bank Reagan v. Lebco Constructors,
Inc., 865 S.W.2d 68, 73 (Tex.
App.ÂCorpus Christi 1993, writ denied).

Â Â Â Â Â Â Â Â Â  KellyÂs evidence that the failure to
fund the contemplated loan diminished his ownership interest in the Cowtown Park is more than a scintilla of evidence that he suffered damages as a result of
GainesÂs and Southwest GuarantyÂs alleged fraudulent conduct.

Â Â Â Â Â Â Â Â Â  In summary, because Kelly presented
more than a scintilla of evidence on each of the elements of his fraud claim
challenged in GainesÂs and Southwest GuarantyÂs second no-evidence summary
judgment motion, the court erred by granting the motion on KellyÂs fraud
claim.Â  Conversely, the court properly granted the motion as to KellyÂs
contract claim.Â  Accordingly, we sustain KellyÂs fourth issue in part and
overrule it in part.

ThompsonÂs And Commercial RealtyÂs

No-Evidence Summary Judgment Motion

Â Â Â Â Â Â Â Â Â  Kelly contends in his fifth issue that
the court erred by sustaining ThompsonÂs and Commercial RealtyÂs no-evidence
summary judgment motion on KellyÂs claims against them for breach of contract,
fraud, and breach of fiduciary duty; on KellyÂs allegation that Thompson and/or
Commercial Realty were agents of Gaines and/or Southwest Guaranty; and on
KellyÂs allegation that Commercial Realty is ThompsonÂs alter ego.

Â Â Â Â Â Â Â Â Â  Thompson and Commercial Realty
contended in their summary judgment motion that Kelly could produce no evidence
that Commercial Realty is the alter ego of Thompson.Â  Kelly responded with
evidence that Thompson is the sole shareholder, officer, and director of
Commercial Realty and controls the corporate bank account.Â  However, Kelly did
not provide a single reference to any document attached to his response to
substantiate these allegations. KellyÂs response is thirty-one pages long,
excluding the signature page and attachments.Â  There are 526 pages of documents
appended to KellyÂs response.

Â Â Â Â Â Â Â Â Â  Â Because Kelly attached a voluminous
series of documents to his summary judgment response and did not identify any
particular evidence to support his contention that Commercial Realty is the
alter ego of Thompson, the court did not err by granting ThompsonÂs and
Commercial RealtyÂs no-evidence summary judgment motion on KellyÂs alter ego
allegation. Â See Rogers v. Ricane Enters., Inc., 772 S.W.2d 76, 81 (Tex. 1989); Guthrie v. Suiter, 934 S.W.2d 820, 825-26 (Tex. App.ÂHouston [1st Dist.]
1996, no writ); cf. Barraza v. Eureka Co., 25 S.W.3d 225, 228-30 (Tex.
App.ÂEl Paso 2000, pet. denied) (such specificity not required where summary
judgment evidence consisted of only 278 pages).

Â Â Â Â Â Â Â Â Â  In response to ThompsonÂs and
Commercial RealtyÂs contentions regarding KellyÂs contract claim, Kelly
identified the summary judgment evidence attached to his response in general
terms.[8]Â  Kelly
then recites six Âdisputed fact issuesÂ but does not provide a single reference
to any document attached to his response to substantiate the allegedly
Âdisputed fact issues.ÂÂ  Because Kelly attached a voluminous series of
documents to his summary judgment response and did not identify any particular
evidence to support his contention that genuine issues of material fact exist
on the contested elements of his contract claim, the court did not err by granting
ThompsonÂs and Commercial RealtyÂs no-evidence summary judgment motion on
KellyÂs contract claim.Â  See Rogers, 772 S.W.2d at 81; Guthrie,
934 S.W.2d at 825-26.

Â Â Â Â Â Â Â Â Â  Thompson and Commercial Realty
contended in their summary judgment motion that Kelly could produce no evidence
to support the following elements of his fraud claim against them: (1) that
Thompson or Commercial Realty made any representations or omissions of material
facts; (2) that Kelly relied on any alleged representations; (3) that Thompson
or Commercial Realty committed any intentional act; (4) that Kelly suffered any
damages because of any alleged misrepresentations; (5) that Thompson or
Commercial Realty made any representation to Kelly with intent to deceive him;
and (6) that Kelly suffered Âany damages at all.Â

With regard to evidence of reliance, Kelly contends
in his appellate briefs that a jury Âcould well determine [that ThompsonÂs
representation that the loan was Âa done dealÂ was] justifiably relied upon by
Kelly.ÂÂ  However, KellyÂs summary judgment response does not address the
reliance element of his fraud claim.Â  Accordingly, the court properly granted
the summary judgment motion as to KellyÂs fraud claim against Thompson and
Commercial Realty.Â  See Tex. R.
Civ. P. 166a(i); Martinez, 146 S.W.3d at 272; Williams, 15
S.W.3d at 117.

Thompson and Commercial Realty contended in
their summary judgment motion that Kelly could produce no evidence to support
the following elements of his breach of fiduciary duty claim against them: (1)
that Commercial Realty[9] failed
to obtain a loan commitment for Kelly; (2) that Commercial Realty knew that
Southwest Guaranty lacked sufficient resources to fund the contemplated loan; (3)
that Commercial Realty has any special relationship with Kelly which would give
rise to a fiduciary duty; and (4) that Commercial Realty acted as KellyÂs agent
after December 11, 1998.

The elements of a breach of fiduciary duty claim
are: (1) a fiduciary relationship between the plaintiff and defendant, (2) the
defendant must have breached its fiduciary duty to the plaintiff, and (3) the
defendantÂs breach must result in injury to the plaintiff or benefit to the
defendant.Â  See Punts v. Wilson, 137 S.W.3d 889, 891 (Tex.
App.ÂTexarkana 2004, no pet.); accord Abetter Trucking Co. v. Arizpe,
113 S.W.3d 503, 508 (Tex. App.ÂHouston [1st Dist.] 2003, no pet.).

With regard to evidence of a fiduciary
relationship, Kelly responded that the Advisory Fee Agreement made Commercial
Realty his agent.Â  A principal-agent relationship constitutes a fiduciary
relationship as a matter of law.Â  See Shands v. Tex. St. Bank, 121
S.W.3d 75, 77 (Tex. App.ÂSan Antonio 2003, pet. denied); Exxon Corp. v.
Breezevale Ltd., 82 S.W.3d 429, 443 (Tex. App.ÂDallas 2002, pet. denied); see
also Johnson, 73 S.W.3d at 200. Â Thus, Kelly produced more than a scintilla
of evidence that Commercial Realty had a fiduciary relationship with him.

On the issue of whether Commercial Realty
breached its fiduciary duty, it is undisputed that Commercial Realty obtained a
loan commitment for Kelly.Â  Kelly, however, argues that Commercial Realty
breached its fiduciary duty because Commercial Realty knew (or should have
known) that Southwest Guaranty did not have adequate resources to fund the
contemplated loan.

In addition to any specific duties required by
an agreement giving rise to a fiduciary relationship, a fiduciary owes at a
minimum a duty of good faith and fair dealing.Â  See Crim Truck & Tractor
Co. v. Navistar Intl. Transp. Corp., 823 S.W.2d 591, 594 (Tex. 1992); Punts,
137 S.W.3d at 892; Abetter Trucking Co., 113 S.W.3d at 508.Â  The
Advisory Fee Agreement required Commercial Realty Âto diligently pursue the
financing on behalf of [Kelly].ÂÂ  Thus, it may be implied from the Advisory Fee
Agreement, particularly when viewed in a light most favorable to Kelly, that
Commercial RealtyÂs duty of good faith and fair dealing required it to seek a
lender which was capable of funding the contemplated loan.

On the issue of whether Commercial Realty
breached its fiduciary duty however, Kelly produced no summary judgment
evidence that Commercial Realty knew or had reason to know that Southwest
Guaranty lacked sufficient resources to fund the contemplated loan.Â  Accordingly,
the court properly granted the summary judgment motion as to KellyÂs claim for
breach of fiduciary duty.

Â Â Â Â Â Â Â Â Â  Thompson and Commercial Realty
contended in their summary judgment motion that Kelly could produce no evidence
that they or either of them acted as agents for Gaines and/or Southwest
Guaranty.Â  Kelly responded with the same evidence he offered in response to
GainesÂs and Southwest GuarantyÂs summary judgment motion on this issue.Â  Thus,
as we have held hereinabove, Kelly presented more than a scintilla of evidence
on the issue of whether Thompson was an agent of Southwest Guaranty.Â  See
Walker Ins. Servs., 108 S.W.3d at 551-52.

Â Â Â Â Â Â Â Â Â  In summary, because Kelly failed to
specify the particular evidence responsive to ThompsonÂs and Commercial
RealtyÂs summary judgment contentions regarding KellyÂs contract claim and
KellyÂs allegation that Commercial Realty is the alter ego of Thompson, the
court properly granted the motion as to these contentions.Â  Because Kelly
failed to address the reliance element of his fraud claim in the summary
judgment response and because he failed to present evidence that Commercial
Realty breach its fiduciary duty, the court properly granted the motion as to
KellyÂs fraud and breach of fiduciary duty claims.Â  Conversely, because Kelly
provided more than a scintilla of evidence on the issue of whether Thompson was
the agent of Gaines and/or Southwest Guaranty, the court erred by granting the
motion on this contention.Â  Accordingly, we sustain KellyÂs fifth issue in part
and overrule it in part.

Motion To Compel

Â Â Â Â Â Â Â Â Â  Kelly contends in his sixth issue that
the court abused its discretion by denying his motion to compel Gaines to
answer deposition questions regarding the source of funding for the
contemplated loan.Â  Gaines and Southwest Guaranty respond that the information
sought (1) is not relevant, (2) is Âa closely held secret [and] proprietary,Â
and (3) Ârevealing that information would be detrimental to the business
relationship.Â

Â Â Â Â Â Â Â Â Â  Neither Gaines nor Southwest Guaranty
filed a response to KellyÂs motion to compel.Â  The court heard the motion to
compel together with KellyÂs second continuance motion and GainesÂs and
Southwest GuarantyÂs second no-evidence summary judgment motion.Â  At this
hearing, Kelly argued that Gaines should be compelled to answer the question
because it is relevant to the issue of whether Southwest Guaranty had adequate
resources to fund the contemplated loan.Â  Kelly explained that this is relevant
to his fraud claim because it would tend to show whether Southwest Guaranty
intended to perform when it made the alleged representation.

Â Â Â Â Â Â Â Â Â  However, the Supreme Court has held
that this type of evidence Âis so weak that it constitutes no evidenceÂ of a
bankÂs intent not to fund an allegedly promised loan.Â  See T.O. Stanley Boot
Co., 847 S.W.2d at 222; accord Beal Bank, 124 S.W.3d at 649-50.Â 
Thus, the court did not abuse its discretion by denying KellyÂs motion to
compel.Â  Accordingly, we overrule KellyÂs sixth issue.

Motions To Reconsider/Motion For New Trial

Â Â Â Â Â Â Â Â Â  Kelly contends in his seventh and
eighth issues respectively that the court abused its discretion by denying his
motions to reconsider its prior summary judgment rulings and by denying his
motion for new trial.

Â Â Â Â Â Â Â Â Â  After a court grants a summary
judgment motion, the court generally has no obligation to consider further
motions on the issues adjudicated by the summary judgment.Â  See Methodist
Hosps. of Dallas v. Corporate Communicators, Inc., 806 S.W.2d 879, 883
(Tex. App.ÂDallas 1991, writ denied); Martin v. 1st Republic Bank, Ft. Worth, N.S., 799 S.W.2d 482, 488-89 (Tex. App.ÂFort Worth 1990, writ denied).Â  A
review of the contentions in KellyÂs brief regarding each of the claims
adjudicated by the summary judgments confirms that no abuse of discretion
occurred.

Â Â Â Â Â Â Â Â Â  Regarding KellyÂs negligence,
conspiracy, and conversion claims, his brief cites no additional evidence
beyond that available to him when the court granted GainesÂs and Southwest
GuarantyÂs first no-evidence summary judgment motion.

Â Â Â Â Â Â Â Â Â  Regarding KellyÂs contract claim
against Gaines and Southwest Guaranty, his brief cites a second affidavit
signed by his own attorney Bullard, excerpts from ThompsonÂs and GainesÂs
depositions, and an affidavit signed by his father-in-law Meeks as ÂadditionalÂ
evidence.Â  However, BullardÂs second affidavit does not vary appreciably from
the one Kelly offered in support of his response to GainesÂs and Southwest
GuarantyÂs first no-evidence summary judgment motion.Â  Moreover, Kelly
indisputably had over three years to depose Gaines and Thompson and secure
necessary evidence from his father-in-law but failed to do so.

Â Â Â Â Â Â Â Â Â  Regarding KellyÂs fraud claim against
Gaines and Southwest Guaranty, his brief cites BullardÂs second affidavit,
KellyÂs own second affidavit, and excerpts from KellyÂs, BullardÂs, and
ThompsonÂs depositions as ÂadditionalÂ evidence.

Â Â Â Â Â Â Â Â Â  Regarding KellyÂs claims against
Thompson and Commercial Realty, his brief cites no additional evidence beyond
that which was available when he responded to ThompsonÂs and Commercial
RealtyÂs summary judgment motion.

Â Â Â Â Â Â Â Â Â  Accordingly, we cannot say that the
court abused its discretion by denying KellyÂs motions to reconsider its
summary judgment rulings and his motion for new trial.Â  See Methodist Hosps.
of Dallas, 806 S.W.2d at 883; Martin, 799 S.W.2d at 488-89.Â  Thus,
we overrule KellyÂs seventh and eighth issues.

Denial of Sanctions

Â Â Â Â Â Â Â Â Â  Gaines and Southwest Guaranty contend
in their first cross-issue[10]
that the court abused its discretion by denying their motion for sanctions
because of KellyÂs production of MeekÂs affidavit after the court had granted
two summary judgments in their favor.Â  Gaines and Southwest Guaranty contend
that Kelly and his counsel Âeither deliberately withheld discoverable evidence
or created a missing piece of evidence.Â

Â Â Â Â Â Â Â Â Â  One of the issues raised by Gaines and
Southwest Guaranty in their second no-evidence summary judgment motion was that
KellyÂs contract claim should fail because Meeks never signed the commitment.Â 
Gaines and Southwest Guaranty had served a request for production on Meeks when
he was a party to the suit seeking Âall documents, including correspondence or
other records of communications, related to the sale or attempted sale or
purchase or attempted purchase of the [Cowtown Park] since 1990.ÂÂ  Meeks
responded that he had no items responsive to this request.

Â Â Â Â Â Â Â Â Â  The court granted GainesÂs and
Southwest GuarantyÂs no-evidence summary judgment motion on KellyÂs contract
claim against them on May 29, 2003.Â  Kelly filed his original motion to
reconsider this ruling on June 16.Â  Kelly included an affidavit from Meeks
dated June 18, 2003 in his response to ThompsonÂs and Commercial RealtyÂs
no-evidence summary judgment motion, which Kelly filed on June 19.Â  Kelly filed
a motion to supplement his motion to reconsider the ruling on GainesÂs and
Southwest GuarantyÂs summary judgment with MeeksÂs affidavit on June 27.Â 
Gaines and Southwest Guaranty then filed their motion for sanctions.Â  They
contend that they are entitled to sanctions because Kelly and his counsel
Âeither deliberately withheld discoverable evidence or created a missing piece
of evidence.Â

Â Â Â Â Â Â Â Â Â  We review a trial courtÂs ruling on a
sanctions motion under an abuse-of-discretion standard.Â  Cire v. Cummings,
134 S.W.3d 835, 838 (Tex. 2004).Â  A sanction must be Âjust,Â which means it
Âmust be directed against the abuse and toward remedying the prejudice caused
to the innocent party, and the sanction should be visited upon the offender.Â 
The trial court must attempt to determine whether the offensive conduct is
attributable to counsel only, to the party only, or to both.ÂÂ  Spohn Hosp.
v. Mayer, 104 S.W.3d 878, 882 (Tex. 2003) (per curiam) (citing TransAmerican
Nat. Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991) (orig.
proceeding)).

Â Â Â Â Â Â Â Â Â  Kelly responds that Meeks properly
responded to the request for production at issue because counsel construed the
request as seeking only Âcorrespondence or other records of communications,Â
which a letter of commitment is arguably not.Â  In addition, GainesÂs and
Southwest GuarantyÂs own brief reflects their recognition that primary
responsibility for any wrongful conduct in this regard lies with Meeks:

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  The evidence before the Court
in the form of Dr. MeeksÂ affidavit and his responses to the requests for
production can only lead to one of two conclusions.Â  The first being that Dr.
Meeks engaged in a discovery abuse by failing to turn over responsive
documents to a properly served request for production or he [Dr. Meeks] has
filed a false statement under oath to the Court.

Â 

Br. Of
Cross-Appellants 15 (May 17, 2004) (emphases added).

Â Â Â Â Â Â Â Â Â  For these reasons, the court may have
determined that MeeksÂs allegedly offensive conduct should not be attributed to
Kelly or his counsel.Â  See Howell v. Tex. WorkersÂ Compen. Commn., 143
S.W.3d 416, 448 (Tex. App.ÂAustin 2004, pet. denied); Finlay v. Olive,
77 S.W.3d 520, 526 (Tex. App.ÂHouston [1st Dist.] 2002, no pet.); see also
Spohn Hosp., 104 S.W.3d at 882.Â  Accordingly, we cannot say the court
abused its discretion by denying GainesÂs and Southwest GuarantyÂs motion for
sanctions.Â  Thus, we overrule their first cross-issue.

GainesÂs And Southwest GuarantyÂs Counterclaims

Â Â Â Â Â Â Â Â Â  Gaines and Southwest Guaranty contend
in their second cross-issue that the court erred by granting KellyÂs
no-evidence summary judgment motion on their counterclaims for fraud, malicious
prosecution, negligent misrepresentation, and conspiracy. 

Â Â Â Â Â Â Â Â Â  Among other challenged elements, Kelly
contended in his summary judgment motion that Gaines and Southwest Guaranty
could produce no evidence of damages on any of their counterclaims.Â  Gaines and
Southwest Guaranty responded that the damages they have suffered are the
attorneyÂs fees they have incurred in KellyÂs suit against them.Â  However,
attorneyÂs fees are not generally recoverable unless provided by statute or
contract.Â  See Gulf States Utils. Co. v. Low, 79 S.W.3d
561, 567 (Tex. 2002); Brown v. Fullenweider, 135 S.W.3d 340, 346 (Tex.
App.ÂTexarkana 2004, pet. denied).Â  AttorneyÂs fees have been permitted in a
fraud case in which the attorneyÂs fees were incurred in prior litigation with
a third party as a result of the defendantÂs fraudulent conduct.Â  See
Lesikar v. Rappeport, 33 S.W.3d 282, 306 (Tex. App.ÂTexarkana 2000, pet.
denied).

Â Â Â Â Â Â Â Â Â  In the context of a malicious
prosecution claim, attorneyÂs fees may be awarded as damages if the plaintiff
first establishes that he has suffered special damages as a result of the
alleged malicious prosecution.Â  IBP, Inc. v. Klumpe, 101 S.W.3d 461,
477-78 (Tex. App.ÂAmarillo 2001, pet. denied).

Â Â Â Â Â Â Â Â Â  Here however, GainesÂs and Southwest
GuarantyÂs offered no evidence of special damages aside from their claim for
attorneyÂs fees incurred in this litigation.Â  Accordingly, they produced no
evidence of damages, and the court properly granted KellyÂs summary judgment
motion on their counterclaims.Â  Thus, we overrule GainesÂs and Southwest
GuarantyÂs second cross-issue.

Release Of Documents Under Seal

Â Â Â Â Â Â Â Â Â  Gaines and Southwest Guaranty contend
in their third cross-issue that the court abused its discretion by denying
their motion to release certain documents which Kelly filed with the court
under seal.

Â Â Â Â Â Â Â Â Â  This issue involves five of GainesÂs
and Southwest GuarantyÂs requests for production.Â  By these requests, Gaines
and Southwest Guaranty asked Kelly to:

4.Â Â Â Â Â 
Produce all financial and
accounting records relating to the Property including the operation of any business
located on or relating to the Property, including but not limited to general
ledgers, payroll records, bank statements, bank records, deposit slips,
canceled checks.

Â 

7.Â Â Â Â Â 
Produce all records that
show any contracts, agreements, loans, transactions, or transfers of money or
other property among or between you and C.W. Stocker, III.

Â 

8.Â Â Â Â Â 
Produce all records that
show any contracts, agreements, loans, transactions, or transfers of money or
other property among or between you and Thomas L. Bullard.

Â 

10.Â 
Produce all records
reflecting or regarding any communications between you and C.W. Stocker III.

Â 

11.Â 
Produce all records
reflecting or regarding any communications between you and Thomas L. Bullard.

Â 

Â Â Â Â Â Â Â Â Â  Kelly raised several objections to
these requests, contending primarily that the requests sought documents
protected by the attorney-client privilege.[11]Â 
Kelly argued in his response to GainesÂs and Southwest GuarantyÂs motion to
compel production that the documents being withheld were privileged because
they related to StockerÂs and BullardÂs representation of him in the suit
against Gaines and Southwest Guaranty and in the prior suit involving the
Cowtown Park.

Â Â Â Â Â Â Â Â Â  Kelly filed a privilege log with the
trial court identifying the documents being withheld as follows: 

Â Â Â Â Â Â Â Â Â  1.Â Â Â Â Â Â  ÂMemo to FileÂ; authored by
C.W. Stocker, III; dated 1-19-99;

Â Â Â Â Â Â Â Â Â  2.Â Â Â Â Â Â  Letter to David Minceberg;
authored by Thomas L. Bullard; dated 2-1-99;








Â Â Â Â Â Â Â Â Â  3.Â Â Â Â Â Â  Letter to David Mincebert;
authored by Thomas L. Bullard; dated 2-2-99;

Â Â Â Â Â Â Â Â Â  4.Â Â Â Â Â Â  Folder containing
correspondence and drafts relating to the creation of Eight

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Diamonds, Ltd., the entity
that eventually purchased the subject property; 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  all documents in said folder
are dated within February, 1999.

Â 

Kelly presented no evidence to support the
asserted privilege.Â  He tendered these documents to the court under seal.

Â Â Â Â Â Â Â Â Â  At a hearing on several motions, the
court explained that it had examined the withheld documents and had concluded
that the documents were protected by the attorney-client privilege.

Â Â Â Â Â Â Â Â Â  A party who seeks to withhold items
from discovery on the basis that the documents are privileged must make a prima
facie showing that the documents are subject to the privilege asserted.Â  In
re E. I. DuPont de Nemours & Co., 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding).Â  Generally, this prima facie showing is made by serving a
privilege log identifying the withheld documents and, if a hearing is held, by
presenting evidence supporting the privilege. Â See In re Maher, 143
S.W.3d 907, 913 (Tex. App.ÂFort Worth 2004, orig. proceeding); In re
Monsanto Co., 998 S.W.2d 917, 924 (Tex. App.ÂWaco 1999, orig. proceeding).Â 
The evidentiary requirement may be satisfied by the documents themselves.Â  See
DuPont, 136 S.W.3d at 223.

Â Â Â Â Â Â Â Â Â  The attorney-client privilege shields
Âconfidential communications made for the purpose of facilitating the rendition
of professional legal services to the client.ÂÂ  Tex. R. Evid. 503(b)(1).

Â Â Â Â Â Â Â Â Â  Because Kelly presented no evidence to
support the asserted privilege other than the documents themselves and because
his privilege log provides a rather non-specific identification of the withheld
documents, it is doubtful that Kelly satisfied his burden to make a prima facie
showing that the withheld documents are privileged.Â  See Maher, 143
S.W.3d at 914.Â  Nevertheless, because the trial court conducted an in-camera
review of the documents, we have reviewed the documents themselves to determine
whether they are privileged.Â  See Monsanto, 998 S.W.2d at 929.

Â Â Â Â Â Â Â Â Â  The documents at issue do not contain
or refer to any communications between Kelly and his attorneys.Â  Rather, the
documents reflect: (1) the conversations Stocker and Bullard had with Gaines
and the actions they took on KellyÂs behalf in an unsuccessful attempt to
obtain a loan from Southwest Guaranty; (2) their unsuccessful attempt to
negotiate the purchase of the property by a third party; and (3) their
successful attempt to structure another financing arrangement to purchase the property
via the Eight Diamonds partnership.Â  Because these documents do not contain
confidential attorney-client communications and because KellyÂs attorneys were
not acting in a legal capacity in these instances, the attorney-client
privilege is not implicated because the communications at issue do not involve
Âthe rendition of professional legal servicesÂÂ  See Tex. R. Evid. 503(b)(1); see also
Pondrum v. Gray, 298 S.W. 409, 412 (Tex. CommÂn App. 1927, holding
approved); In re Bivins, 162 S.W.3d 415, 419 (Tex. App.Â­Â­ÂWaco 2005,
orig. proceeding) (per curiam); Navigant Consulting, Inc. v. Wilkinson,
220 F.R.D. 467, 474 (N.D. Tex. 2004).

Â Â Â Â Â Â Â Â Â  Thus, the court abused its discretion
by allowing Kelly to withhold these documents from disclosure.Â  Accordingly, we
sustain GainesÂs and Southwest GuarantyÂs third cross-issue.




Conclusion

Â Â Â Â Â Â Â Â Â  We have determined that the trial
court erred in rendering a summary judgment on KellyÂs fraud claim against
Gaines and Southwest Guaranty, on KellyÂs claim against Gaines and Southwest
Guaranty for exemplary damages, and on the issue of whether Thompson was the
agent of Gaines and/or Southwest Guaranty.Â  We have also determined that the
court abused its discretion by denying GainesÂs and Southwest GuarantyÂs motion
to unseal the documents Kelly tendered to the court under seal.Â  However, we
have found no error with respect to the remainder of the issues presented by Kelly
or the cross-issues presented by Gaines and Southwest Guaranty.

Â Â Â Â Â Â Â Â Â  We affirm: (1) the take-nothing
judgment rendered in favor of Thompson and Commercial Realty in its entirety;
(2) that portion of the summary judgment granted on KellyÂs claims against
Gaines and Southwest Guaranty for breach of contract, negligence, conspiracy,
and conversion; and (3) the take-nothing judgment rendered in favor of Kelly on
GainesÂs and Southwest GuarantyÂs counterclaims.Â  We reverse: (1) that portion
of the summary judgment granted on KellyÂs claims against Gaines and Southwest
Guaranty for fraud and exemplary damages; and (2) the courtÂs order denying
GainesÂs and Southwest GuarantyÂs motion to unseal the documents Kelly tendered
to the court under seal.Â  We remand this cause to the trial 
court for further proceedings consistent with this opinion.

Â 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring and dissenting)

Affirmed in part,

Reversed and remanded
in part

Opinion delivered and
filed July 13, 2005

[CV06]









[1]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Jeff Thompson is the brother
of Appellee Robert Thompson.Â  Jeff performed the appraisal of the property on
behalf of IDC Services.Â  Kelly ultimately settled with Jeff Thompson and IDC
Services.

Â 





[2]
Â Â Â Â Â Â Â Â Â  Kelly contends in his brief that
the continuance also should have been granted because notice of the summary
judgment hearing received by his newly-retained counsel was not effective until
the court granted the motion for withdrawal and substitution of counsel, which
was less than 21 days before the date of the hearing.Â  However, Kelly did not
present this contention to the trial court in his continuance motion or at the
hearing.Â  Thus, it has not been preserved for appellate review.Â  See Tex. R. App. P. 33.1(a)(1)(A).Â  





[3] Â Â Â Â Â Â Â Â Â  Kelly makes a similar observation
with regard to GainesÂs status as a pro se litigant during this period, but
Kelly does not allege that he could take no action against Gaines during this
period.





[4]
Â Â Â Â Â Â Â Â Â  BlackÂs defines a Âloan
commitmentÂ as Â[a] lenderÂs binding promise to a borrower to lend a specified
amount of money at a certain interest rate, usu. within a specified period and
for a specified purpose (such as buying real estate).ÂÂ  Blacks Law
Dictionary 955 (Bryan A. Garner ed., 8th ed., West 2004).

Â 





[5]Â Â Â Â Â Â Â Â Â Â  BlackÂs defines a Âballoon
noteÂ as Â[a] note requiring small periodic payments but a very large final
payment.Â  The periodic payments usu. cover only interest, while the final
payment (the balloon payment) represents the entire principal.ÂÂ  Id. at 1088.

Â 





[6] Â Â Â Â Â Â Â Â Â  Because we are affirming the courtÂs
ruling that Gaines is not personally liable, we refer to only Southwest
Guaranty hereinafter when discussing the merits of KellyÂs contract claim.

Â 





[7] Â Â Â Â Â Â Â Â Â  Rule 54 provides:

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  In pleading
the performance or occurrence of conditions precedent, it shall be sufficient
to aver generally that all conditions precedent have been performed or have
occurred.Â  When such performances or occurrences have been so plead, the party
so pleading same shall be required to prove only such of them as are
specifically denied by the opposite party.

Â 

Tex. R.
Civ. P. 54.

Â 

Â 

Â 





[8]
Â Â Â Â Â Â Â Â Â  For example, ÂNon-Movant, Roger
Kelly, claims a genuine issue of material fact exists as to Non-MovantÂs claim
of Breach of Contract - and submits affidavits of Kelly, Bullard, Meeks,
discovery in the form of MovantsÂ responses to Interrogatories, documentary
evidence, Non-MovantÂs Second Amended Petition and Movants pleadings, as
summary judgment evidence, referenced in an appendix attached hereto, filed
with this response and incorporated by such reference for all purposes as if
recited verbatim herein.Â





[9] Â Â Â Â Â Â Â Â Â  Because we have affirmed the courtÂs
ruling that Commercial Realty is not ThompsonÂs alter ego, we refer to only
Commercial Realty hereinafter when discussing the merits of KellyÂs breach of
fiduciary duty claim.





[10] Â Â Â Â Â Â Â Â  Pursuant to Rule of Appellate
Procedure 25.1(c), Gaines and Southwest Guaranty filed their own notice of
appeal to properly perfect their cross-appeal.





[11] Â Â Â Â Â Â Â Â  Kelly also objected that these
requests sought documents protected by the work product privilege and that the
requests were overbroad.